INDEPENDENT SCHOOL DISTRICT of Dubuque, Appellee, v. FRANK A. SASS, Defendant, et al., Appellants; AMERICAN TRUST AND SAVINGS BANK, Cross-petition Appellee.

No. 42760.

May 14, 1935.

Milton J. Glenn, F. D. Gilloon, and Gilloon & Glenn, for appellant United States Fidelity & Guaranty Co.

Kenline, Roedell, Hoffmann & Tierney, for appellant New Amsterdam Casualty Co.

Allan J. Kane, for defendant Frank A. Sass.

Milton J. Glenn, for cross-petition appellee American Trust & Savings Bank of Dubuque.

Brown, Lacy & Clewell, for appellee Independent School District of Dubuque.

POWERS, J.—This action was brought by the Independent School District of Dubuque upon the official bond of a former treasurer of the school district to recover the sum of $30,000 which it was claimed the former treasurer, Frank A. Sass, was short in his accounts. The action was against the former treasurer and the sureties on his official bond. The bond which he had been required to furnish was for $50,000. This he had accomplished by means of two bonds for $25,000 each, one with the United States Fidelity & Guaranty Company as surety, and the other with the New Amsterdam Casualty Company as surety.

The sureties answered separately, admitting the identity and capacity of the parties and the resignation of Sass as school treasurer, and the appointment and qualification of J. W. Winall as his successor, and that each was surety for $25,000 on the official bond of defendant, Sass, and for lack of information denied the other allegations of the petition. Appearance was entered by an attorney for defendant, Sass, but no answer was filed in his behalf and judgment was entered against him by default. A jury was waived and the case tried to the court. The court found in favor of the school district and entered judgment accordingly, limiting, however, the recovery against each surety to $25,000. No separate findings of fact and conclusions of law by the court were demanded and none were filed. The United States Fidelity & Guaranty Company will be referred to herein as the Guaranty company, and the New Amsterdam Casualty Company as the Casualty company.

Many errors assigned by both the Guaranty company and the Casualty company relate to the admission of testimony offered by plaintiff over objection as to its competency. In addition, the Casualty company contends the evidence does not establish a default on the part of Sass, and complains of the rejection of testimony in support of its theory of the defense, and of the order of the court striking a cross petition filed by it. Both appellants complain as to the form of the judgment. Errors assigned on the admission of testimony will be first considered.

I. Complaint is made that the books of the treasurer and the books and records of the secretary of the school district and the ledger sheets of the two banks where the school district carried accounts were received in evidence without proper identification over the objection that no proper foundation had been laid and they were incompetent. Complaint is also made of the failure of the court to sustain objections to certain questions propounded to witnesses on the ground that they called for incompetent conclusions and not the best evidence. We are of the opinion that if there were error in connection with the receipt of the evidence and testimony complained of, such error, under the record in this case, was without prejudice. The situation is a peculiar one. The principal in the bond, the former treasurer, defaulted and did not appear at the trial. No evidence was introduced by any of the defendants on the question of the default of

the former treasurer. All the evidence in the case bearing upon that question is the evidence introduced by the plaintiff.

■■■ If all of the evidence of which complaint is made on this appeal be excluded from the record, it would still appear without controversy that the former treasurer drew a check for $30,000 upon the account of the school district in the First National Bank of Dubuque, payable to the American Trust & Savings Bank of Dubuque; that this check was cashed by the payee bank and the amount thereof withdrawn from the account of the school district in the First National Bank of Dubuque; and that the proceeds were not credited on any account of the school district. This established prima facie that the former treasurer was short in his accounts with the school district and that he failed to turn over to his successor the full amount which he should have turned over. The check, itself, with the indorsements thereon, was in evidence in the case without objection. An officer of the payee bank, without objection, testified that no account of the Independent School District was credited with the proceeds of the check. Not only that, but portions of the report of the state checkers, who audited the accounts of the former treasurer, showing the shortage, were in the case without objection. It is well settled in this state that where a fact is established by competent evidence in the case, the receipt of incompetent evidence in support of that fact is without prejudice. Escher v. Carroll County, 146 Iowa 738, 125 N. W. 810. In the case at bar, the only facts which the evidence complained of tended to establish were facts that were not only established by other evidence, but were established without conflict. There is no dispute as to the facts in the case. The evidence does not create a conflict. If all the evidence complained of were excluded, the result could not have been different. Under such circumstances, it would be an idle ceremony and a pure academic exercise to enter into a consideration of whether or not there was technical error in overruling objections made to evidence offered on behalf of the plaintiff, because any error there might have been in that respect is entirely harmless and without prejudice and would not justify a reversal. In re Will of Wiltsey, 135 Iowa 430, 109 N. W. 776.

II. The Casualty company freely admits that there is no lack of competent evidence to establish the shortage of the treasurer. In its reply argument it says:

"The alleged shortage grows out of a $30,000 check of plaintiff School District by Sass, treasurer, upon the First National Bank, payable to the American Bank. There is not, nor ever was, any question as to where the $30,000 went. It was received by the American Bank. The record shows that no account of the School District was ever credited by the American Bank with the amount so received."

■■■ The Casualty company contends, however, that while all this is true and is clearly established by the evidence, yet, the school district has not made out a case of the loss of those funds, because it says that the default is not that of the treasurer; that his making the check which he made was an appropriate means of transferring funds from one bank to the other; that the loss resulting to the school district is due, not to any act of the treasurer, but to the failure of the American Trust & Savings Bank to credit the account of the Independent School District with the proceeds of this check; that the money is there in the bank; that the school district can recover it from the bank; and that in that situation the school district has not suffered any loss by reason of the default of the treasurer.

We have no occasion to determine the legal sufficiency of the defense that the treasurer acted innocently, because it is without support in the facts. There is no evidence to indicate that the former treasurer was an innocent victim in the transaction. He makes no such claim in the case. There is no evidence whatever that he intended by the check merely to transfer funds from one bank to another. There was, obviously, no necessity for naming the bank as payee if that were the purpose. He was an officer of the American Trust & Savings Bank, an assistant cashier. He certainly knew how the check was being handled and there is no evidence that he ever protested, or ever requested or expected it to be handled otherwise than it was handled. He was not shown to be an innocent victim of some other person's wrong. The finding of the trial court that the treasurer failed in his duty as treasurer, and failed to carry out the obligation of his bond because of his misappropriation of the funds of the school district by means of this check, is amply sustained by the evidence.

■■■ The claim of the Casualty company that the proceeds of this $30,000 check obtained by the American Trust & Savings

Bank is the property of the school district and that the school district only has to proceed against the bank in order to obtain such proceeds is, in effect, an argument that the school district must first exhaust its remedies against those whom its treasurer has illegally placed in possession of its funds before it can proceed against the sureties on the treasurer's bond. If it be conceded that the school district has a good cause of action against the American Trust & Savings Bank, it does not follow that it is required to pursue it. Where two people are jointly liable for the conversion of funds, the owner of the funds may sue either. Home Savings Bank v. Otterbach, 135 Iowa 157, 112 N. W. 769, 124 Am. St. Rep. 267.

██ He is not required to sue one rather than the other, nor to sue both. Moreover, the obligation of the treasurer upon the termination of his office was to turn over to his successor all of the funds properly in his hands as such treasurer. The undertaking of the sureties on his official bond is that he will do that very thing. His failure to do it is a breach of the bond and the school district has a right to look to the sureties on his bond to make good his default. The fact that the school district might have a cause of action against some third person unlawfully in possession of the funds is no defense.

██ The Casualty company makes the further claim by way of defense here that a conspiracy exists between some of the officers of the school district and the representatives of the Guaranty company and the officers of the American Trust & Savings Bank to shift to the Casualty company a loss which does not properly belong to it. The claim, briefly, is that Sass, as assistant cashier of the American Trust & Savings Bank, was responsible for a shortage in the funds of the bank; that the Guaranty company was surety on his bond as assistant cashier of the bank and liable for his default as an officer of the bank; that it was to cover this shortage that the $30,000 check was executed by him as treasurer of the school district, payable to the American Trust & Savings Bank; that the effect of this manipulation was to relieve the Guaranty company from paying the entire loss, because the Guaranty company was the only surety on his bond as assistant cashier of the American Trust & Savings Bank, and to make the Casualty company liable for a part of that loss because the Casualty company and the Guaranty company were both sureties on his bond as treasurer of the school district. Indeed, it is claimed

that Sass has turned over to the Guaranty company security of the value of $17,000 which, if retained by the Guaranty company, may result in the Guaranty company suffering no loss, and all the loss being cast on the Casualty company. It is claimed that this scheme was made possible because a member of the school board is also an officer or employee of the American Trust & Savings Bank, and also of the Guaranty company. Complaint is made that the trial court refused to permit questions to be propounded to witnesses which would develop facts to sustain this theory of the defense. It is not pleaded by the casualty company as a defense, and no formal offer of proof of such facts was made by the Casualty company, and it does not appear that the trial court was advised as to the purpose of the evidence when the questions were propounded to the witnesses. Moreover, these facts, if established by the evidence, would not be a defense. By action of the school treasurer, $30,000 was taken from the funds of the school district and turned over to a bank of which the treasurer was an officer. No member of the school board had any right to authorize such payment. No conduct of a member of the board could bind the school district on such payment. If a member of the school board actually encouraged the payment, it would not be a defense. Board of County Commissioners v. Sheehan, 42 Minn. 57, 43 N. W. 690, 5 L. R. A. 785. The appellants here are sureties on the official bond of the school treasurer. They have undertaken to guarantee the honest and faithful performance by him of the duties of his office. It would be a strange situation indeed, if proof by them, or either of them of the perfidy and lack of honesty on the part of the treasurer would relieve them from liability on the bond when the very purpose of the bond was to protect the school district from the consequences of just such misconduct on the part of its treasurer. The former treasurer certainly could not have pleaded his own misconduct as a defense, and the general rule is that the surety can make no defense not available to the principal. Boone County v. Jones, 54 Iowa 699, 2 N. W. 987, 7 N. W. 155, 37 Am. Rep. 229. The school district had a right to proceed against the former treasurer for failure to turn over to his successor funds which he had received as treasurer. If it had a cause of action against its treasurer on that account, it had a cause of action against the sureties on his official bond. The motives which prompted the officers of the school district to sue the treasurer and sureties on

his official bond rather than attempt to pursue some other remedy which might have been open to them is entirely immaterial.

■■■ The final claim of the Casualty company is that the school district has not suffered a loss in the sum of $30,000, because the evidence showed that the Guaranty company obtained security from Sass to the extent of about $17,000, and that this security should first be applied to the payment of plaintiff's claim. But the school district had nothing to do with that transaction. It has received nothing because of it. It is asking for nothing except the enforcement of the obligation of the bond which it holds. The school district's cause of action had accrued. It could be satisfied only by restoring to it funds which its former treasurer had failed to turn over. The fact that one of the sureties on the bond holds security cannot diminish the right of the school district to recover on the bond.

■■■ III. The Casualty company, as a defendant, filed, in addition to its answer, a cross petition to which it made the American Trust & Savings Bank a defendant. In this cross petition, it alleged that Sass had checked $30,000 out of the funds of the school district to the American Trust & Savings Bank and that this was done for the purpose of making up the shortage of Sass as assistant cashier of said bank and prayed that if judgment should be entered against it, that it have judgment over against the American Trust & Savings Bank for a like amount. Both the American Trust & Savings Bank and the Guaranty company moved to strike this cross petition upon the ground, among others, that the issues presented by the cross petition did not affect the subject-matter of the action stated in plaintiff's petition.

Section 11155, Code 1931, permits the filing of a cross petition by a defendant in an action against a codefendant or other person "when a defendant has a cause of action affecting the subject matter of the action." The subject-matter of the original action here was a suit on the official bond of the treasurer of the school district for failure on his part to account for and turn over funds of the school district which had come into his possession. Did the cause of action which the Casualty company attempted to state in its cross petition affect the subject-matter of that action? The American Trust & Savings Bank was not a surety upon the official bond of the treasurer. It had no obligation to make good his default as treasurer of the school district

in whole or in part. It was not a party to the instrument upon which the original suit was brought. The proof of the claim set up in the cross petition would not defeat or diminish plaintiff's claim. The American Trust & Savings Bank alone was interested in the issue raised by the cross petition. The cross petition could have no bearing on the relief to which plaintiff would be entitled. Plaintiff's cause of action is on a written contract against parties to the contract. The cross petition seeks to state a cause of action in tort against one who was not a party to the contract. Obviously, the cause of action which the Casualty company attempted to state in its cross petition against the American Trust & Savings Bank is dependent on a different set of facts, arises from the violation of a different obligation, affects only one who is not a proper party to plaintiff's petition, and does not affect the subject-matter of the original action. See Eller v. Newell, 159 Iowa 711, 141 N. W. 52; Markley v. Lockwood, 188 Iowa 357, 176 N. W. 294; Bannister v. McIntire, 112 Iowa 600, 84 N. W. 707. There was no error in striking it.

 IV. Both appellants complain of the form of the judgment entry in this case, first, on the ground that it fails to fix the order of liability as between the principal and the sureties, and, second, because it is in such form that it appears to render judgment against the appellants in excess of the amount of the bond furnished by them. The form of the judgment entry seems not to have been objected to below, before or after the entry thereof, by either of the appellants. The questions, therefore, which are now raised were never presented to the trial court and are now presented for the first time in this court. Under our holdings, this cannot be done. If complaint is to be made as to the form of the judgment entry relating to some question not raised, by the pleadings, it should in some appropriate way be called to the attention of the trial court and a ruling obtained thereon. In the absence of any such objection, or any effort to correct the judgment entry in the trial court, there is nothing here for review. Houts v. Sioux City Brass Works et al., 134 Iowa 484, 110 N. W. 166.

 We have, however, examined the alleged errors in connection with the form of the judgment. No substantial rights of the appellants are prejudiced thereby. No rights of the appellants against the principal in the bond on which they were sureties is taken away by the form of the judgment. The judg-

ment entry establishes a claim in favor of the plaintiff and against the defendants, jointly, for the total sum of $30,000, with interest from the date when demand was made upon the former treasurer. The only individual judgment rendered against the appellants, however, is for the sum of $25,000, with interest from the date when demand was made upon them. Such a judgment was rendered against each appellant. This is the limit of what could be collected on the judgment against either appellant. Upon the payment of that amount by either one of the appellants, such appellant would be entitled to a satisfaction of the judgment as to it. The limitation on the liability of each appellant is sufficiently safeguarded by the judgment entry properly construed. There was no reversible error in connection with the form of the judgment.

V. This entire controversy bears all the earmarks of mere jockeying for position and advantage as between the American Trust & Savings Bank and the Guaranty company and the Casualty company. Nobody seriously argues that the school district has not had its funds raided to the extent of $30,000 through the action of the school treasurer, and nobody seems to seriously contend that it is not entitled to reimbursement. The chief concern of the parties, other than the school district, seems to relate to the question as to where the loss is going to fall ultimately. With that question, of course, we have nothing to do here, and it never should have been injected into this case. The school district is entitled to its money. It is entitled to receive it from those who undertook to supply it in the event of the treasurer's default, namely, the sureties on his official bond. When the sureties have made the school district whole, questions as between themselves and against others who it is claimed are wrongfully in possession of funds belonging to the school district may properly arise. Many questions discussed in the briefs are not before us. We are not concerned here, for example, with the question whether the security which the guaranty company obtained can be held by it for its sole protection, or whether it will inure to the benefit of both sureties. Neither are we concerned here with the question whether the sureties on the official bond will be subrogated to the rights of the school district against the American Trust & Savings Bank. The approval by this court of the action of the trial court in striking the cross petition against the American Trust & Savings Bank

here is solely upon the ground that it sought to introduce a controversy foreign to the pending action. The ruling is, of course, without prejudice to the rights of the Casualty company to assert, in a proper action, whatever cause of action it may now have or may hereafter acquire against the American Trust & Savings Bank, or against the Guaranty company.

The motion of appellee, the American Trust & Savings Bank, to dismiss as to it the separate appeal of the Casualty company, ordered submitted with the case, is hereby overruled.

The judgment of the trial court should be and it is hereby affirmed.

All Justices concur.