BETTY ANN AUGUSTA, appellee, v. LEONARD JENSEN et al., appellants.

No. 47608.

(Reported in 42 N.W.2d 383)

MAY 2, 1950.

Ross, Johnson, Northrop & Stuart and Emmet Tinley II, all of Council Bluffs, for appellants.

Roy W. Smith, of Council Bluffs, and J. J. Higgins, of Omaha, Nebraska, for appellee.

MULRONEY, J.—On the evening of April 3, 1947, Leonard and Mike Jensen and Howard Swenson met in the Trapeze bar in Omaha. The young men, all in their early twenties, had dates with three girls of about their own ages. Leonard had a date with Betty Ann Augusta, Mike had a date with Betty Ann's sister Camille, and Howard had a date with Mary Peck. The young men had one whisky highball apiece in the Trapeze bar and they then bought a pint of whisky and left in a car for the girls' apartment. The car was owned by Martin Jensen, the father of Leonard and Mike, and driven by Leonard. Upon arrival at the girls' apartment something was said about going to the Seventeen Club in Council Bluffs. They went to this club

where they danced until about twelve o'clock and where they all, with the exception of Camille, had a couple of drinks apiece. After leaving the club they drove around Council Bluffs, with Leonard driving and Betty Ann sitting next to him in the front seat and the other two couples in the back seat. About 12:30 Leonard, in attempting to make a left turn at an intersection, crashed into a light pole and Betty Ann was injured when her head struck the windshield.

In one count of Betty Ann's suit against Leonard and Martin Jensen for damages for injuries she sustained she alleged that Leonard was operating the automobile while under the influence of intoxicating liquor. The answer denied the intoxication and pleaded that in any event plaintiff had full knowledge of the competency of Leonard to drive and she accepted and assumed all risks incident to his operation of the car. The case was tried to the court who found Leonard was, at the time of the accident, under the influence of intoxicating liquor; that the damages suffered by plaintiff were caused as a result of the driver, Leonard, being under the influence of intoxicating liquor; and "that the plaintiff guest, not knowing that the defendant Leonard Jensen was under the influence of intoxicating liquor, did not assume the risk." The trial court rendered judgment for plaintiff in the sum of $4000 and defendants appeal, challenging the trial court's findings on the ground that: (1) the evidence fails to establish intoxication (2) the evidence establishes assumption of risk as a matter of law, and (3) the evidence fails to establish any intoxication of Leonard was the proximate cause of plaintiff's injuries.

I. This is a law action tried to the court, so the trial court's findings are each equivalent to a special verdict of a jury. Miller v. King, 240 Iowa 1336, 39 N.W.2d 307. Our only duty is to review the record to see if the trial court's findings are supported by substantial evidence.

II. The trial court found Leonard was operating the car at the time of the accident while under the influence of intoxicating liquor. Leonard admits he had one drink in the Trapeze bar early in the evening and two drinks at Club Seventeen. Leonard and his brother say the drinks in Club Seventeen were poured from the pint bottle of whisky into 7-Up setups.

Immediately after the accident Leonard told his brother to get rid of the whisky bottle which was then in the glove compartment of the car and Mike took this bottle, which he says was about two-thirds full, from the car and threw it away. Leonard was arrested after the accident and he spent the night in jail. The next morning he pleaded guilty in the district court to the crime of operating a motor vehicle while intoxicated. A doctor testified as to the result of a blood test which he made of Leonard's blood about an hour and a half after the accident. The doctor testified the blood test showed 165 milligrams of alcohol per 100 cc. of blood and that the presence of 150 milligrams of alcohol in 100 cc. of blood would in his opinion show intoxication. The doctor said he had run over two hundred blood tests upon individuals to determine alcoholic content. This evidence is substantial. support for the trial court's finding that Leonard was operating the car while under the influence of intoxicating liquor.

III. The trial court found the plaintiff did not know Leonard was under the influence of liquor while he was driving and did not assume the risk of his driving while in that condition. Plaintiff testified that Leonard did not appear to her to be intoxicated. Her sister Camille flatly said that in her opinion Leonard was sober. In fact all of the occupants of the car who testified said there was nothing about Leonard's actions which would lead one to believe he was under the influence of intoxicating liquor. There was evidence that both Betty Ann and Camille asked Leonard, shortly before the accident, to drive slower and they said Mike asked him to drive slower, but Mike did not remember making such a request.

One who becomes a guest in an automobile knowing and appreciating that the driver is intoxicated acquiesces in the operation of the car and will be held to be assuming the risk of the resulting accident. White v. McVicker, 216 Iowa 90, 246 N.W. 385; Wittrock v. Newcom, 224 Iowa 925, 277 N.W. 286. But, under a record where all of the testimony shows the driver was not obviously intoxicated, and the guest testified he did not appear to her to be under the influence of intoxicating liquor, the question of assumption of risk would be for the court

in a case where the jury is waived. Wittrock v. Newcom, supra; White v. Zell, 224 Iowa 359, 276 N.W. 76.

Assumption of risk is an affirmative defense and the burden is upon the defendant to establish it. In order to sustain this assigned error the defendant must argue that the record establishes that plaintiff assumed the risk as a matter of law. We have said that, "in the absence of an admission by the adverse party, it is not often that a party having the burden upon such an issue [affirmative defense] establishes it as a matter of law." Maland v. Tesdall, 232 Iowa 959, 963, 5 N.W.2d 327, 329. We hold the record here falls far short of establishing the defense of assumption of risk as a matter of law.

IV. The assigned error attacking the trial court's finding that the driver's intoxication was the proximate cause of the plaintiff's injury is without merit. The short argument advanced by defendants is that the record shows "that the sole cause of the accident was the fact that appellant [Leonard Jensen], who was not familiar with the city, cut the corner [on a left turn] too sharply and struck the light pole." No cases are cited by defendants. The argument merely relates what the driver did. After holding the driver was under the influence of liquor, the court could well hold the liquor the driver consumed influenced the "too sharp" left turn. There was evidence that the windshield was somewhat fogged up, and evidence by the driver that he was blinded by the lights of an oncoming car—which the girls did not see—but, in any event, the record does not establish as a matter of law that something other than the driver's intoxication was the sole cause of the plaintiff's injury. Maland v. Tesdall, supra.

V. Other errors asserted by the defendants have to do with the admission of testimony. Plaintiff put Leonard on the stand and after he testified he had pleaded guilty to driving while intoxicated defendants' counsel, on cross-examination, asked him to state the reasons why he pleaded guilty. Plaintiff's objection of "improper cross-examination" was sustained. No prejudicial error resulted. When Leonard later testified for the defense he was allowed to testify at length with regard to the reasons why he entered his plea of guilty to driving while intoxicated.

■ VI. Two assignments have to do with the testimony of Dr. Weir, the doctor who made the blood test. The first is the failure of the court to refuse Dr. Weir's testimony as to his finding of intoxication after running a blood test on Leonard, on the theory that the test made at 1:50 a.m. following the accident at 12:30 a.m. was too remote. The assignment is without merit. There was no claim he drank any whisky after the accident. The blood content was from whisky consumed before the accident. Evidence that he was intoxicated, by a blood test taken about an hour and a half after he had had access to any whisky, would be evidence that he was intoxicated at the time of the accident.

■ VII. Error is asserted in the trial court's refusal to sustain objections to Dr. Weir's rebuttal testimony. In this testimony the doctor merely explained the meaning in alcoholic and whisky volume of the presence of 165 milligrams of alcohol per 100 cc. of blood. He said that in a man of average weight it denoted four and a fraction ounces of absolute alcohol or ten and a fraction ounces of 100-proof whisky. The testimony was merely explanatory of his previous testimony, and no error resulted in its admission.

■ VIII. Finally the appellant complains that the verdict was excessive. The plaintiff's jaw was fractured. She lost eight teeth, including one false tooth. Her forehead and chin were cut so that the cuts had to be sewed up. Her jaws were wired together for three weeks, during which time she lived on liquids sipped through a tube. She suffered much pain. She was treated by an oral surgeon and a dentist. Her chin is scarred. She earned at the time of the accident $110 a month, and she lost five months' work. Her dentist bill was in the sum of $403. The oral surgeon gave rather evasive answers when questioned about the value of his services but finally said the reasonable value of his services would be $1500.

Under the whole record we do not find the judgment of $4000 excessive. The judgment of the trial court is affirmed.— Affirmed.

All JUSTICES concur.