LIZZIE M. BOHNSACK, administratrix of estate of WALTER C. BOHNSACK, appellant, v. LESLIE E. DRIFTMIER, appellee.

No. 48026.

(Reported in 52 N.W.2d 79)

384

MARCH 4, 1952.

James E. Coonley, of Hampton, and Senneff & Bliss, of Mason City, for appellant.

Leming & Hobson, of Hampton, and Westfall, Laird & Burington, of Mason City, for appellee.

GARFIELD, J.—On February 28, 1950, about 8 p.m., Walter Bohnsack, twenty-one, was riding as a guest of defendant, Driftmier, in his automobile. While defendant was driving south on paved U. S. Highway 65 his car collided with a truck going north.

Bohnsack was killed. His mother, as his administratrix, brought this law action under the guest statute, section 321.494, Code, 1950, to recover for his death, alleging it was caused by defendant's reckless operation of his automobile.

At the close of plaintiff's evidence defendant moved for a directed verdict because of claimed insufficient evidence of reckless operation. After the court indicated he felt the motion was good plaintiff amended her petition to conform to the proof by alleging defendant was under the influence of intoxicating liquor and the collision and death were caused thereby. Defendant admitted these new allegations and averred decedent knew or should have known defendant was intoxicated and therefore assumed the risk of riding with defendant.

The court instructed the jury it was admitted defendant was intoxicated at the time of the collision and such intoxication was the proximate cause thereof and plaintiff was entitled to recover if she proved she was damaged by her son's death, unless defendant proved his affirmative defense of assumption of risk. There was a verdict and judgment for defendant from which plaintiff appealed.

I.   Plaintiff asserts error in the court's not submitting to the jury the issue of reckless operation of defendant's automobile, first pleaded by her. This requires mention of the evidence.

Plaintiff met defendant and two Fielding brothers in a tavern at Hampton between 5 and 6 p.m. the day of the collision. Defendant testifies he had a glass of beer there. The Fielding brothers had taken a drink of whiskey about 3 p.m. About 6:30 the four left the tavern in defendant's car. Defendant then bought two pints of whiskey and Clarence Fielding one pint. Thus equipped the four started for Sheffield. Clarence says each had a drink of whiskey on the road. According to defendant each took two drinks. When they reached Sheffield they went to a tavern and got four bottles of 7-Up which they "spiked" and drank. They may have had more than one round of drinks there. Clarence Fielding drank one or two bottles of beer.

After perhaps an hour at this tavern the four started the return trip to Hampton. Clarence purchased six cans of beer to take with them. Bohnsack's sister was in the tavern at Sheffield

and asked him to return to Hampton with her rather than with his male companions, but he refused. About seven miles south of Sheffield, as might have been expected, a collision occurred.

Boyd was driving his cattle truck north. He first saw defendant's car when about a half mile away. It was on its right (west) half of the highway until it was within 200 to 300 feet of the truck when it came across onto the east half and east shoulder. It was then probably 75 feet from the truck which slowed down and blinked its lights several times. In an effort to avoid a collision the truck turned to its left (west) a little over the center line, defendant's car quickly veered to its right (also west) toward the center, and the right side of the two vehicles collided on the east half of the pavement.

Defendant and the Fielding brothers received head and other injuries in the collision. Defendant testifies he remembers nothing that happened after he was seated in the tavern at Sheffield. Clarence says he recalls nothing that occurred after leaving there. Harry Fielding testifies he remembers nothing that happened in the tavern at Hampton or later. Clarence says, "I guess Harry was pretty tight."

There is ample evidence defendant was under the influence of liquor when the party left Sheffield. Defendant was convicted of drunken driving. Three unopened beer cans were in the car after the collision. Two empty ones and another partly empty were found near the wreck. A pint bottle of whiskey three-fourths full was found in defendant's pocket. (As stated, he bought two pints just before they left Hampton.)

The above is a sufficient indication of the evidence for the present. We are not inclined to hold it was error not to submit the issue of reckless operation of defendant's car as an added ground of recovery. In a sense it is doubtless reckless for one to drive a car when he is under the influence of liquor. We have never held, however, that doing so in itself amounts to reckless operation under the guest statute. And in Martin v. Momyer, 230 Iowa 1158, 1165, 300 N.W. 310, 314, we say the issue of reckless operation should not have been submitted to the jury although there was substantial evidence the driver was under the influence of liquor, drove his car onto the wrong lane of the pave-

ment and collided with an oncoming car. See also Davis v. Hollowell, 326 Mich. 673, 40 N.W.2d 641, 643, 15 A. L. R.2d 1160, 1164.

So far as shown, defendant's car was being driven properly on its right side of the highway until it was within 200 to 300 feet of the truck. Then without explanation, other than defendant's intoxication, the car left its proper place on the highway and got into the path of the truck. A finding of recklessness would necessarily rest largely if not wholly on this movement of the car just before the collision.

On the issue of recklessness the case is much like Nehring v. Smith, 243 Iowa 225, 49 N.W.2d 831. While there was no evidence in the cited case liquor was used or the lights of the oncoming car were "blinked", there defendant's car traveled 50 to 55 miles an hour without reducing speed—here there is no evidence of defendant's speed. Here, too, defendant made a belated effort to avoid the collision by turning to his right—nothing of the kind appeared in Nehring v. Smith.

Vandell v. Roewe, 232 Iowa 896, 6 N.W.2d 295, and Martin v. Momyer, supra, 230 Iowa 1158, 1165, 300 N.W. 310, 314, also involve somewhat similar facts.

Of the twelve precedents plaintiff cites on this branch of the case four hold a jury question on the issue of recklessness was not presented. We think the showing of recklessness in the others, including Allbaugh v. Ashby, 226 Iowa 574, 284 N.W. 816, and White v. Center, 218 Iowa 1027, 254 N.W. 90, was considerably stronger than in the present case.

Further, we conclude plaintiff suffered no prejudice by the failure to submit to the jury the issue of reckless operation of defendant's automobile. As previously explained, plaintiff alleged and defendant admitted defendant was under the influence of liquor and this was the proximate cause of the collision and death. The jury was instructed (and no complaint is made thereof) to accept these admitted allegations as established facts and that to entitle plaintiff to recover it was necessary to find only that she was damaged. A finding for plaintiff on the issue of reckless operation, had it been submitted, would entitle her to nothing she was not already entitled to under the court's instructions as given.

It has been suggested plaintiff's decedent may not have assumed the risk of defendant's reckless operation although he did

assume the risk of riding with defendant while intoxicated. Let this be admitted and that the jury could have so found. (See in this connection Koepke v. Miller, 241 Wis. 501, 6 N.W.2d 670, 672.) This would not have aided plaintiff. If, as plaintiff alleged and the jury was instructed without objection, the proximate cause of the collision was defendant's intoxication, assumption of the risk of such admitted cause (which the jury found) would be a complete defense even though defendant may have operated his car recklessly and plaintiff's decedent did not assume the risk of such reckless operation. (We use the term "intoxication" to mean being under the influence of liquor.)

Plaintiff's argument she would have been better off if the jury had been allowed to find either, or both, reckless operation or intoxication would have merit if a finding adverse to her on the issue of defendant's intoxication had been permitted under the court's instructions. Then two chances for recovery would have been better for plaintiff than one—the jury might have found against her on one and for her on the other. However here, as previously stated, a finding for plaintiff on the issue of intoxication was mandatory.

II. Instruction 5, dealing with the defense of assumption of risk, first summarizes the allegations of defendant's answer pertaining thereto. Plaintiff complains that the instruction states in substance "defendant alleges said Bohnsack joined with defendant and two others in the plan of procuring liquor in Hampton, then driving to Sheffield, drinking" etc., because it is said there is no evidence decedent joined in a plan to procure liquor.

This complaint is without merit. The quoted language merely refers to allegations in defendant's answer also set out in the first instruction, to which no objection was made. Instruction 2 cautioned the jury that allegations of the petition and answer should not be considered as evidence but merely as claims of the parties. If there were no evidence decedent joined in a plan to procure liquor the instructions should not have referred to the allegation but the reference would not be sufficiently prejudicial to warrant reversal. Clayton v. McIlrath, 241 Iowa 1162, 1166, 1167, 44 N.W.2d 741, 744, and citations.

390

Here, however, we think there is circumstantial evidence decedent joined in a plan to procure liquor. The four men met in a tavern at Hampton, left together, were together until the liquor was purchased (although decedent and Harry Fielding waited in the car), promptly drank from the same bottle and continued in each other's company until the collision occurred.

■■ III. Another complaint against instruction 5 is more serious. The jury was told it is the law that where one voluntarily becomes a guest in an automobile when he knows *or should have known* the driver is under the influence of liquor, he is deemed to assume the risk of an accident and injury and cannot recover against the driver. Later, in applying the law to the facts of the case, instruction 5 states that if decedent knew defendant was intoxicated, or if a reasonable man under like circumstances would have known such fact, plaintiff cannot recover.

Plaintiff excepted to the use of the words we have italicized and argues her decedent did not assume the risk of defendant's intoxication merely because he should have known of it. Use of the italicized words in instruction 5 was of vital importance in the jury's determination. In answer to special interrogatories the jury found decedent did not know defendant was intoxicated but should have known it. In all probability the verdict for defendant rests on this finding. This complaint against instruction 5 must be sustained.

■■ The doctrine of assumption of risk has been most commonly applied in actions against a master to recover for a servant's injury. But it is frequently applied in actions against a motorist to recover for injury to a guest in the vehicle. We first recognized its applicability to a case under our guest statute (Code section 321.494) by way of dictum in White v. McVicker, 216 Iowa 90, 94, 246 N.W. 385, where we say in substance that one who voluntarily becomes a guest in an automobile with knowledge the driver is intoxicated or reckless and, with such knowledge, acquiesces in such intoxication or recklessness assumes the risk of an accident arising therefrom.

White v. Center, supra, 218 Iowa 1027, 1034, 1035, 254 N.W. 90, 93, refers to White v. McVicker, supra, and says: "* * * the doctrine of assumption of risk is placed upon knowledge and

acquiescence of the plaintiff. In the case at bar, no knowledge is shown on the part of the appellant of the acts which it is claimed constituted recklessness at the time of the collision. * * * Necessarily, therefore, he could not have aquiesced."

What we said in White v. McVicker is also followed in Stingley v. Crawford, 219 Iowa 509, 512, 258 N.W. 316, 318, which states, "The material point is that, before the doctrine of assumption of risk can apply, the plaintiff must have known of the danger."

Wittrock v. Newcom, 224 Iowa 925, 931, 277 N.W. 286, 289, repeats this quotation from a text set out in White v. McVicker, supra: " 'As a rule, the application of the maxim is justifiable if the plaintiff received his injuries * * * with full knowledge of the nature and extent of the risk.' "

Garrity v. Mangan, 232 Iowa 1188, 1193, 6 N.W.2d 292, 295, holds, under the facts shown, the guest as a matter of law assumed the risk of the driver's intoxication where such condition must have been obvious to the guest. The opinion says the doctrine applies where one becomes a guest in a car "knowing and appreciating the driver is * * * intoxicated." This is again quoted in Miller v. Mathis, 233 Iowa 221, 225, 226, 8 N.W.2d 744, 747.

Augusta v. Jensen, 241 Iowa 697, 700, 42 N.W.2d 383, 385, states: "One who becomes a guest in an automobile knowing and appreciating that the driver is intoxicated acquiesces in the operation of the car and will be held to be assuming the risk of the resulting accident."

Thornbury v. Maley, 242 Iowa 70, 78, 45 N.W.2d 576, 581, holds it was proper not to submit to the jury the defense of assumption of risk in a guest case where there was evidence the occupants of the car were drinking. The opinion observes, "Under the evidence we do not see where the appellee's decedent had any knowledge of Maley's claimed intoxication."

Jackson v. Chicago, M., St. P. & P. R. Co., 238 Iowa 1253, 1261, 30 N.W.2d 97, 102, although not brought under our guest statute, says, "The doctrine of assumed risk applies where a plaintiff has actual knowledge of a danger * * * appreciates the risk arising therefrom, and voluntarily exposes himself to it." (Citations.)

392

We have uniformly held contributory negligence is not an issue or a defense in an action under the guest statute. Siesseger v. Puth, 213 Iowa 164, 182, 239 N.W. 46; Shenkle v. Mains, 216 Iowa 1324, 1332, 247 N.W. 635; Edwards v. Kirk, 227 Iowa 684, 687, 288 N.W. 875; Miller v. Mathis, supra, 233 Iowa 221, 227, 8 N.W.2d 744, 747; Hansen v. Nelson, 240 Iowa 1298, 1305, 39 N.W.2d 292, 296.

As stated, the verdict here in all probability rests on a finding that while decedent did not know defendant was intoxicated, he should have known it. And, as previously explained, the jury was told that if a reasonable man under like circumstances would have known defendant was intoxicated when decedent entered the automobile, the latter assumed the risk. Thus recovery was denied not because decedent voluntarily assumed the risk of a known danger or one that must have been obvious (as in Garrity v. Mangan, supra, 232 Iowa 1188, 1193, 6 N.W.2d 292, 295), but because he was negligent in failing to discover the danger. In reality the verdict rests on a finding of contributory negligence.

The doctrine of assumed risk is an application of the maxim, volenti non fit injuria—"That to which a person assents is not esteemed in law an injury." Edwards v. Kirk, supra, 227 Iowa 684, 686, 288 N.W. 875; Pierce v. Clemens, 113 Ind. App. 65, 46 N.E.2d 836, 840; 38 Am. Jur., Negligence, section 171.

We have frequently pointed out that assumption of risk should not be confused with contributory negligence. As said in White v. McVicker, supra, 216 Iowa 90, 91, 246 N.W. 385, 386, "While the doctrine of contributory negligence and assumption of risk may arise under the same set of facts and sometimes thus overlap each other, yet we have consistently distinguished them and held that they are distinct and separate and must not be confounded with each other." (Citations.) It is specially important not to confuse assumption of risk with contributory negligence in cases like this where contributory negligence is not an available defense. Obviously it is not so important in master-and-servant cases and others in which both doctrines are applicable.

Mere lack of care, without more, does not amount to assumption of risk. The doctrine involves a choice between a

course known to be dangerous and one that is not. See Edwards v. Kirk, supra; 38 Am. Jur., Negligence, section 172; note, 18 Iowa Law Review 358, 361 ("The doctrine of assumption of risk is not based on negligence but the voluntary assumption of the danger by the plaintiff with full knowledge thereof * * *.").

We say in Thornbury v. Maley, supra, 242 Iowa 70, 78, 45 N.W.2d 576, 581, and Booth v. General Mills, 243 Iowa 206, 208, 49 N.W.2d 561, 562, the doctrine of assumed risk "is applicable where one is placed in a position where he has a choice of doing or not doing a given act." The choice is to be made more or less deliberately. See Thornbury v. Maley, supra; Shatto v. Grabin, 233 Iowa 46, 51, 52, 6 N.W.2d 149, 152; 38 Am. Jur., Negligence, section 172.

It cannot logically be held that one has deliberately chosen a dangerous course of which he is ignorant merely because he should have known of it. The effect of instruction 5 here is to enlarge the doctrine of assumed risk to include conduct which amounts merely to contributory negligence notwithstanding our repeated decisions that contributory negligence is not an issue or a defense in actions under our guest statute.

The doctrine of assumed risk has been frequently applied in Wisconsin where it is said: "Before a guest can be held to have assumed the risk of his host's negligence, the evidence must show (1) a hazard or danger inconsistent with the safety of the guest; (2) knowledge and appreciation of the hazard by the guest; and (3) acquiescence or a willingness to proceed in the face of the danger." Prunty v. Vandenberg, 257 Wis. 469, 480, 44 N.W.2d 246, 252; Rule v. Jones, 256 Wis. 102, 108, 40 N.W.2d 580, 583; Kimball v. Mathey, 252 Wis. 194, 197, 31 N.W.2d 184, 186; Knipfer v. Shaw, 210 Wis. 617, 621, 246 N.W. 328, 330. 61 C. J. S., Motor Vehicles, section 486g(1), page 95, also says these are the three elements of assumption of risk, and adds: "Under this doctrine an occupant * * * assumes the risk of injuries from known or obvious dangers * * *."

Restatement, Torts, section 482, subsection (2), states: "A plaintiff is barred from recovery for harm caused by the defendant's reckless disregard for the plaintiff's safety if, knowing of

the defendant's reckless misconduct and the danger involved to him therein, the plaintiff recklessly exposes himself thereto."

4 Blashfield, Cyc. of Automobile Law and Practice, Part 1, Perm. Ed., section 2511, page 707, says, citing White v. Center, supra, 218 Iowa 1027, 254 N.W. 90, "It is only risks of which the guest is aware and which he understands that he assumes." And section 2512, page 717, id. states, citing Stingley v. Crawford, supra, 219 Iowa 509, 258 N.W. 316, "However, as the statement of the rule implies, it does not apply when the guest has no knowledge of the danger * * *."

61 C. J. S., Motor Vehicles, section 486g (1), page 96, says, "An occupant does not assume the risk of a hazard or danger of which he has no knowledge or appreciation."

38 Am. Jur., Negligence, section 173, states: "Knowledge and appreciation of the danger is an essential of the defense of assumption of risk."

There is language in Evans v. Holsinger, 242 Iowa 990, 1000, 48 N.W.2d 250, 256, which furnishes support for the part of instruction 5 of which plaintiff complains. Similar language appears in Booth v. General Mills, supra, 243 Iowa 206, 208, 49 N.W.2d 561, 562, which cites the Evans case. The question here presented was not involved or discussed and we had no thought of deciding it in either of those cases.

IV. Defendant argues, in effect, that if instruction 5 was error in the respect claimed it was without prejudice to plaintiff because, it is said, plaintiff's decedent assumed the risk of defendant's intoxication as a matter of law. But we think this defense was for the jury.

While, as stated, there is ample evidence and it is admitted defendant was intoxicated when the men left Sheffield, there is also substantial testimony he appeared not to be intoxicated and to be able to drive his car. Clarence Fielding testifies, "As near as I can remember, to all appearances he was sober." The bartender in the Sheffield tavern says, "I observed Driftmier as he walked out. I observed nothing to indicate to me he had been drinking." Another witness who was in the Sheffield tavern at the time testifies defendant was doing nothing that attracted his attention.

Although decedent was in defendant's company most of the time after they met in the tavern at Hampton and participated in the drinking, the two must have been comparative strangers, since decedent had been discharged from the Army only about eight days. Decedent was twenty-one, defendant fifty. So far as shown (and defendant had the burden as to the defense of assumed risk) decedent may have believed defendant was capable of driving his car without mishap. There is no evidence defendant drove improperly until a few moments before the collision.

We cannot say, as we did in Garrity v. Mangan, supra, 232 Iowa 1188, 1193, 6 N.W.2d 292, 295, defendant's intoxication must have been obvious to his companion. The case is more like Augusta v. Jensen, supra, 241 Iowa 697, 42 N.W.2d 383, and Booth v. General Mills, supra, 243 Iowa 206, 49 N.W.2d 561, where we held such a defense was not conclusively established. See also Agans v. General Mills, 242 Iowa 978, 48 N.W.2d 242 (not brought under our guest statute), where it was held the issue of freedom from contributory negligence was for the jury, and Davis v. Hollowell, supra, 326 Mich. 673, 40 N.W.2d 641, 15 A. L. R.2d 1160.

V. Plaintiff's remaining complaints pertain to rulings on evidence. We find no reversible error in them. The town marshal of Sheffield was allowed, over plaintiff's objection that the question called for an opinion and no proper foundation was laid, to say defendant was intoxicated while in the tavern there. The witness testified he had considerable experience in observing intoxicated persons and saw defendant and his companions for a time in the tavern.

Under our decisions a witness who has observed a person may express an opinion whether he is intoxicated without first stating the facts on which the opinion is based. State v. Wheelock, 218 Iowa 178, 185, 186, 254 N.W. 313, and citations. See also 20 Am. Jur., Evidence, section 876; 32 C. J. S., Evidence, section 508, page 184. Further, the testimony was not prejudicial to plaintiff since she alleged defendant was under the influence of liquor at the time of the collision and such fact was admitted.

■ VI. Defendant was asked whether there was any reason the drinking was not done in Hampton instead of Sheffield. Over plaintiff's objection of incompetent, irrelevant and immaterial defendant answered, "Well I guess some of them couldn't drink beer here." It is clear from the record defendant referred to the Fielding brothers or one of them, not to himself or decedent. Before this testimony was received Clarence Fielding testified, without objection, "We could not buy beer there [Hampton tavern] at that time." And plaintiff herself showed, on cross-examination of the operator of the Hampton tavern, "There would be no reason why I shouldn't have served Bohnsack beer * * *. We have had trouble with Butch every time he came in so that is off limits for him. He has been told to stay out."

Defendant's testimony to which plaintiff objected added little, if anything, to evidence received without objection and was therefore not prejudicial to plaintiff. See Crawford v. Emerson Constr. Co., 222 Iowa 378, 389, 269 N.W. 334; Independent School District v. Sass, 220 Iowa 1, 4, 5, 261 N.W. 30; Silvers v. Floyd, 151 Iowa 415, 417, 131 N.W. 652.

■ VII. Defendant was asked whether the four men decided before he went to get his car they were going to Sheffield. Plaintiff objected to the competency of the witness under Code section 622.4 which states in part that no party to an action shall be examined as to any personal transaction or communication between him and a person deceased, against the latter's administrator. The objection was overruled and defendant answered "Yes."

The question did not necessarily call for a personal transaction or communication between defendant and Bohnsack but only for a conclusion as to what the four men decided in their own minds. The only objection was to competency of the witness under 622.4. It was not error to overrule that objection. Further, the answer does not seem to have been prejudicial to plaintiff. Defendant testified without objection that when he and Clarence Fielding bought the whiskey and got in the car they "figured on going" to Sheffield and getting beer. It was not important just when it was decided to make the trip.

The error pointed out in Division III entitles plaintiff to a new trial.—Reversed.

All JUSTICES concur except BLISS, J., who takes no part.